UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY,

        *Plaintiffs*,

          -against-

WELLMART RX, INC., SIMON DAVYDOV,
RUSLAN NEKTALOV A/K/A RUSS NEKTA,
MICHAEL JOCOBI, M.D., JOANNE MAGRO,
M.D., CONRAD CEAN, M.D., DENNY
RODRIGUEZ, M.D., ANDREW PATRICK,
M.D., RAFAEL DELACRUZ-GOMEZ, M.D.,
RADHA GARA, M.D., VIVIANE ETIENNE,
M.D., MIHAELA DAJDEA, P.A., CLAUDIA
GERIS, P.A., CARLINE BOUBERT, P.A.,
AND JOHN DOES NOS. "1" THROUGH "5,"

        *Defendants*.
----------------------------------X

**MEMORANDUM & ORDER**

19-CV-04414(KAM)(RLM)

**MATSUMOTO, United States District Judge:**

        Plaintiffs, Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Co. (together, "plaintiffs" or "GEICO"), commenced this litigation against defendants on July 31, 2019. (ECF No. 1, Compl.)  The instant motion seeks two forms of relief.  First, GEICO seeks to stay all collection arbitrations arising under New York's No-Fault Insurance law, and pending before the American Arbitration Association ("AAA"), between defendant Wellmart RX, Inc. ("Wellmart") and GEICO, until resolution of the instant federal action.  (ECF No. 68-2, Memorandum of Law in Support of Plaintiffs' Motion ("Mot."), 1.)

Second, GEICO moves to enjoin Wellmart, along with its record owners, Ruslan Nektalov and Simon Davydov (collectively, the "Pharmacy Defendants"), from commencing any new No-Fault collection arbitrations or civil collection lawsuits against GEICO on behalf of Wellmart, until this action is resolved. (*Id.*)

For the reasons stated below, plaintiffs' motion is granted.

## BACKGROUND

## I.  New York's No-Fault Insurance Laws

New York enacted the Comprehensive Automobile Insurance Reparations Act, New York Insurance Law ("N.Y. Ins. Law") §§ 5101–5109, for the purpose of "ensur[ing] prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts[,] and to provide substantial premium savings to New York motorists." *Med. Soc'y of State of N.Y. v. Serio*, 800 N.E.2d 728, 731 (N.Y. 2003) (citing Governor's Mem. approving L. 1973, ch. 13, 1973 McKinney's Session Laws of N.Y., at 2335).  No-Fault insurers, like GEICO, may reimburse patients up to $50,000 without proof of the other driver's fault; reimbursements may include necessary expenses incurred for medical or other professional health services.  *See* N.Y. Ins. Law §§ 5102(a)(1),

(b).  Insurers are required to verify a claim, and then pay or deny the claim within 30 days.  *See* N.Y. Ins. Law § 5106(a); N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 11 §§ 65-3.8(a), (c). Under New York law, an insured may assign his or her benefits "directly to providers of health care services." 11 NYCRR § 65-3.11(a).  The regulations specify the criteria needed for a health care provider to receive direct payment from the insurer. *See* 11 NYCRR § 65-3.11(b).

Section 5106 of the New York Insurance Law creates a "[f]air claims settlement" procedure for all No-Fault claims. No-Fault benefits are deemed overdue if they are not paid or denied within 30 calendar days after proof of claim is submitted.  *See* N.Y. Ins. L. § 5106(a); 11 NYCRR § 65-3.8(c). If an insurer fails to comply with this timeframe, it will be precluded from asserting many (but not all) defenses to coverage, including most fraud-based defenses.  *See Fair Price Med. Supply Corp. v. Travelers Indem. Co.*, 10 N.Y.3d 556 (N.Y. 2008); *Cent. Gen. Hosp. v. Chubb Grp. of Ins. Cos.*, 90 N.Y.2d 195, 199, 659 N.Y.S.2d 246 (N.Y. 1997).  A claimant may bring an action in state court to recover overdue No-Fault benefits, and in any such action the claimant need only show that the prescribed statutory billing forms were mailed and received and that the benefits are overdue.  *See Viviane Etienne Med. Care, P.C. v. Country-Wide Ins. Co.*, 25 N.Y.3d 498, 506 (N.Y. 2015).

In addition, insurers are required to include a clause in their policies allowing the claimant to seek arbitration of their claims for No-Fault benefits. *See* N.Y. Ins. L. § 5106(b); 11 NYCRR § 65-1.1(a), (d).

New York's No-Fault Insurance law establishes the procedures for arbitration of disputed claims. *See* 11 NYCRR § 65-4.5. By statute, the New York Department of Financial Services Superintendent has designated AAA as the body responsible for administration of the No-Fault arbitration process. *Id.* § 65-4.2(a)(2). Insurers generally bear the costs associated with the arbitration process in direct proportion to the frequency with which they are named as respondents. *Id.* § 65-4.2(c)(1). The Second Circuit has commented that the "arbitration process for No-Fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible. Discovery is limited or non-existent. Complex fraud and RICO claims, maturing years after the initial claimants were fully reimbursed, cannot be shoehorned into this system." *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014) (citing 11 NYCRR § 65-4.5)).

An insurer who pays No-Fault benefits and subsequently discovers fraud may bring an action for damages. *See State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F.

Supp. 2d 221, 229-235 (E.D.N.Y. 2008); *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 2008 WL 4146190, at *6-7 (E.D.N.Y. Sept. 5, 2008).  The insurer may also bring an action for a declaratory judgment that it is not liable for any unpaid claims where the provider has committed fraud or breached applicable No-Fault regulations.  *See* 28 U.S.C. § 2201; *Gov't Emps. Ins. Co. v. Jacques*, 2017 WL 9487191, at *9-*11 (E.D.N.Y. Feb. 13, 2017), *report and recommendation adopted*, 2017 WL 1214460 (E.D.N.Y. Mar. 31, 2017); *State Farm Mut. Auto. Ins. Co. v. Cohan*, 2009 WL 10449036, at *4 (E.D.N.Y. Dec. 30, 2009), *report and recommendation adopted*, 2010 WL 890975 (E.D.N.Y. Mar. 8, 2010).  However, if an insurer is precluded from asserting a defense to coverage (such as provider fraud) due to its noncompliance with the 30-day rule, it will also be precluded from obtaining a declaratory judgment on those same grounds. *See Allstate Ins. Co. v. Williams*, 2015 WL 5560543, at *7 (E.D.N.Y. Aug. 28, 2015), *report and recommendation adopted*, 2015 WL 5560546 (E.D.N.Y. 2015); *Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C.*, 2013 WL 5131057, at *8 (E.D.N.Y. Sept. 12, 2013).

## II.  **GEICO's Allegations**

GEICO alleges that, since 2015, the Pharmacy Defendants have submitted more $7.3 million in fraudulent

billing to GEICO for medically unnecessary pharmaceutical products as part of a scheme designed to exploit New York's No-Fault Insurance law. (Compl. ¶ 2.) The scheme allegedly operated as follows. The Pharmacy Defendants entered into illegal, collusive agreements with various prescribing healthcare providers, including eight New York-licensed physicians and three physician assistants (collectively, "Prescribing Defendants"). (*Id.*) In exchange for kickbacks, the Prescribing Defendants generated boilerplate and medically unnecessary prescriptions for "pain-relieving" pharmaceuticals using template prescription forms supplied by the Pharmacy Defendants. (*Id.* ¶ 1.) The prescriptions were dispensed to individuals involved in automobile accidents and eligible for No-Fault coverage under GEICO insurance policies. (*Id.*) The Prescribing Defendants would also produce generic, pre-printed examination reports to justify the continued dispensation of excessive/unnecessary pharmaceutical products to patients. (*Id.* ¶ 70.) As part of the scheme, Wellmart also mass-produced and dispensed topical compound pain creams ("Fraudulent Compounded Pain Creams"), in pre-set formulations that were neither FDA-approved nor tailored to the individual needs of patients, and thus, violative of federal and state regulations. (*Id.* ¶ 4.)[1]

---

[1]    Compounding is a "long-recognized practice" that serves certain patients who might be allergic to ingredients in approved drugs or incapable

GEICO's complaint seeks a declaration by the court, pursuant to 28 U.S.C. §§ 2201, 2202, that GEICO is not legally obligated to reimburse Wellmart for over $5,700,100 in pending No-Fault claims that defendants either submitted or caused to be submitted through Wellmart. (Compl. ¶ 6.) GEICO also seeks recovery of approximately $1,190,700 in fraudulent bills paid to Wellmart, and asserts causes of action under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), conspiracy to violate RICO, common law fraud, aiding and abetting fraud, and unjust enrichment. (*Id.* ¶¶ 215-62.)

## III.  Collection Proceedings

According to a declaration submitted by GEICO Claims Manager Robert Weir, Wellmart is currently prosecuting more than 1,500 collection arbitrations against GEICO before AAA. (ECF No. 68-4, Declaration of Robert Weir ("Weir Decl."), ¶ 5.) In addition, Wellmart is prosecuting 45 civil court suits in New

---

of tolerating conventional forms of dosage (*e.g.*, tablets). *Allergan USA, Inc. v. Imprimis Pharm., Inc.*, No. 817CV01551DOCJDE, 2019 WL 4545960, at *4 (C.D. Cal. Mar. 27, 2019). "However, because compounded drugs are not FDA approved and do not undergo premarket review by FDA for safety, effectiveness, and quality, they also present a greater risk to patients than FDA-approved drugs." *Id.* (record citation omitted). Accordingly, both federal and state governments regulate the manufacture and sale of compound drugs. On the federal level, compound drugs are subject to FDA premarket approval requirements except where, among other things, the drug in question was "compounded for an identified individual patient." 21 U.S.C. § 353a(a). New York State imposes professional misconduct penalties on physicians who enter into an agreement with a pharmacy for prescribing compound drugs, and imposes criminal penalties on individuals who enter into agreements with physicians for compounding prescriptions. N.Y. Educ. Law §§ 6530(8), 6811.

York City Civil Court, Kings County. (*Id.*) These arbitrations and civil suits seek to collect on charges that are the subject of GEICO's declaratory judgment claim before this court. (*Id.*) Notably, Wellmart commenced almost 1,200 of the pending 1,500 collection arbitrations after the commencement of this suit, including 644 arbitrations in November 2019 alone. (*Id.* ¶ 6.) In all, the arbitrations seek to recover more than $4,144,000 in No-Fault claims, and Wellmart's civil court lawsuits seek more than $112,000 in claims against GEICO. (*Id.* ¶¶ 6, 7.)

In support of plaintiffs' requested relief, Weir asserts the procedures and practices in No-Fault arbitration proceedings impose critical handicaps on insurers like GEICO. Insurers generally are not permitted to seek or obtain pre-hearing discovery beyond the discrete bill and claim at issue, which, for practical purposes, obviates an insurer's ability to demonstrate a pattern of medically unnecessary treatment or fraudulent billing practices across multiple patients and claims. (*Id.* ¶ 15.) During the pendency of this case, the Pharmacy Defendants have continued to pursue collection of individual bills through arbitration and state court proceedings. (Mot. 9.) GEICO avers that defendants are well aware that the statutorily expedited No-Fault arbitration procedures and civil court proceedings cannot accommodate the time or resources needed for GEICO to demonstrate the complex

fraudulent scheme that generates each individual bill, and are therefore trying to litigate Wellmart's individual bills on a piecemeal basis.  (*Id.*)

## IV.  Dissipation of Wellmart's Assets

In their pre-motion letter, the Pharmacy Defendants represented that Wellmart had recently sold its assets and terminated its business operations "more than three months before the filing of the [instant] lawsuit."  (ECF No. 66, Defs.' Pre-Mot. Ltr., p.3.)  The Pharmacy Defendants, however, have not identified the buyer of Wellmart's assets.  Further, GEICO claims that, according to bank records obtained through a non-party subpoena, Wellmart has transferred over $1.2 million out of its bank account in the 12-month period from June 2018 to May 2019.  (ECF No. 68-3, Declaration of Michael A. Sirignano ("Sirignano Decl.") ¶ 20.)  These withdrawals have taken the form of myriad small MoneyGram transfers, usually for less than $10,000 each.  (*Id*; Mot. 7.)  GEICO's claims are substantiated by Wellmart's bank statements, which are appended as an exhibit to the motion.  (ECF No. 68-12, Wellmart Bank Statements.)  The court will discuss Wellmart's financial records below in connection with the irreparable harm prong of plaintiffs' motion.

**LEGAL STANDARD**

GEICO moves to stay and enjoin defendants' No-Fault collection proceedings. GEICO's dual requests are considered in tandem as a motion to stay and a motion for a preliminary injunction to prevent additional actions from being filed. Courts look to the preliminary injunction standard under such circumstances. *See Gov't Emps. Ins. Co. v. Cean*, No. 19CV2363PKCSMG, 2019 WL 6253804, at *4 (E.D.N.Y. Nov. 22, 2019) (citing *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013)); *see also Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005). "In order to justify a preliminary injunction, a movant must demonstrate (1) irreparable harm absent injunctive relief; and (2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor.'" *Metro. Taxicab Bd. of Trade v. City of New York,* 615 F.3d 152, 156 (2d Cir. 2010) (quoting *Almontaser v. New York City Dept. of Educ.,* 519 F.3d 505, 508 (2d Cir. 2008)). "The showing of irreparable harm is [p]erhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely

before the other requirements for an injunction will be considered." *Elzanaty*, 929 F. Supp. 2d at 221 (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)).

### A. Irreparable Harm

"To establish irreparable harm, a party seeking preliminary injunctive relief must show that 'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Kamerling*, 295 F.3d at 214 (quoting *New York Pathological & X-Ray Labs., Inc. v. INS*, 523 F.2d 79, 81 (2d Cir. 1975)). The crux of GEICO's argument is, absent a stay, the collection proceedings will not merely drain GEICO of time and resources, but will also invite inconsistent judicial outcomes. (Mot. 11.) GEICO further contends that, given Wellmart's transfer of funds, money damages are unlikely to provide adequate compensation. (*Id.* 3.)

GEICO's position is supported by ample authority. In *Elzanaty*, as here, insurers sought a declaratory judgment that defendants were not entitled to collect on pending No-Fault bills. 929 F. Supp. 2d at 204-05. Judge Splatt's decision to enjoin defendants' No-Fault collection arbitrations pending disposition of the insurers' declaratory judgment claims, *see id.* at 211-13, 217-22, was based on the:

concern here with wasting time and resources in an arbitration with awards that might eventually be, at best, inconsistent with this Court's ruling, and at worst, essentially ineffective. The Court need not address now the precise effect of an inconsistent declaratory judgment from this Court on certain arbitration awards. It is sufficient to recognize the large realm of potential problems this may cause on the validity of those awards, especially in light of their multitude and internal inconsistency with each other. Thus, the Court agrees that allowing a large number of proceedings to be heard by a mix of arbitrators, each of whom will likely come to their own independent and potentially contradictory conclusions, will result in harm to Allstate from which it cannot recover.

*Id.* at 222.

Judge Glasser came to a similar conclusion in *Gov't Emps. Ins. Co. v. Mayzenberg*, granting GEICO's motion to stay all pending and future No-Fault collection arbitrations brought by defendant-healthcare providers, because:

While it is true that mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury, money, time, and resources spent arbitrating these claims are not the only potential injuries here. The concern is that allowing over 180 arbitrations to be heard by a mix of arbitrators, each of whom will likely come to their own independent and contradictory conclusions that may be rendered ineffective by this Court, will result in harm to GEICO from which it cannot recover.

No. 17-CV-2802, 2018 WL 6031156, at *5 (E.D.N.Y. Nov. 16, 2018) (citations, brackets, and internal quotation marks omitted).

The conclusions and reasoning in *Mayzenberg* and *Elzanaty* have been reiterated time and again in this Circuit. *See, e.g.*, *Cean*, 2019 WL 6253804, at *5 ("GEICO argues that

wasting time and resources in arbitrations with awards that might eventually be, at best, inconsistent with judicial rulings and, at worst, essentially ineffective, constitutes irreparable harm. The Court agrees.") (citations and internal quotation marks omitted); *Gov't Emps. Ins. Co. v. Strut*, No. 19-CV-728V, 2019 WL 6338023, at *8 (W.D.N.Y Nov. 26, 2019) ("The net result of all of these circumstances is that, without an injunction that stays additional arbitration proceedings, GEICO will have to make payments on claims with serious questions about consistency; will have to arbitrate many times on claims that it tries to resist; and will face the prospect of inconsistent judgments between arbitration proceedings and from this case. Judicial economy tips the balance of those equities decidedly in GEICO's favor, to avoid irreparable harm."); *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 233 (E.D.N.Y. 2018) ("Courts have readily held that irreparable harm occurs where, as here, an insurer is required to waste time defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action."); *Gov't Emps. Ins. Co. v. Strutsovskiy*, No. 12-CV-330, 2017 WL 4837584, at *6 (W.D.N.Y. Oct. 26, 2017) (staying no-fault arbitrations of unpaid insurance claims where GEICO argued "wasting time and resources in arbitrations that might result in awards inconsistent with future judicial rulings constitutes

irreparable harm sufficient to stay arbitration."); and *Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 264 (E.D.N.Y. 2012) ("Permitting these individual claims to proceed to arbitration while their claim for a declaratory judgment remains pending in this court puts the plaintiffs at significant risk of multiple judgments that may be inconsistent with the ultimate decision in this case. In the interests of judicial economy, arbitration of such unpaid claims is stayed pending a decision in the present case.").

In response to this overwhelming adverse authority, Wellmart cites "substantial precedent" against GEICO's proposed injunction. (ECF No. 68-15, Defendant Wellmart's Memorandum of Law in Opposition ("Wellmart Opp.") 13.) Wellmart relies on *Allstate Ins. Co. v. Harvey Family Chiropractic*, a summary order issued by the Second Circuit which affirmed the denial of Allstate's request to stay No-Fault arbitrations and civil court collection suits. 677 F. App'x 716 (2d Cir. 2017.) Though GEICO dismisses *Harvey* as a summary order without precedential effect, (*see* ECF No. 68-35, Reply 3 n.2 (citing *AHW Inv. P'ship v. Citigroup Inc.*, 806 F.3d 695, fn. 5 (2d Cir. 2015)), Wellmart insists that this court should apply *Harvey*'s reasoning that "'mere injuries . . . in terms of money, time and energy necessarily expended' absent a stay of ongoing state court and arbitration proceedings 'are not enough' to establish

irreparable harm." *Id.* (quoting *Jayaraj v. Scappini*, 66 F.3d 36 (2d Cir. 1995)).[2]

Regardless of *Harvey*'s precedential effect, as with most summary orders, the decision does not "set out the factual background of the case in enough detail to disclose whether its facts are sufficiently similar to those of a subsequent unrelated case to make [the] summary ruling applicable to the new case." *Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011). *Harvey*'s limited discussion of the underlying facts deprives the court of the ability to meaningfully compare *Harvey* to the present circumstances. In addition, though *Harvey* states that the loss of money, time, and energy may not constitute irreparable harm, the Second Circuit said nothing of the risk of inconsistent judgments, or of the risk that money damages would not be available if plaintiff ultimately obtained a declaratory

---

[2]    In *Jayaraj*, on which *Harvey* relied, the plaintiff was a terminated employee who commenced an action for damages and injunctive relief, and moved for a preliminary injunction to reinstate his employment. 66 F.3d at 38. The Second Circuit denied the injunction, reasoning that if plaintiff prevailed on the merits, monetary damages would be adequate to compensate him for the temporary absence from his job. *See id.* at 39-40. "*Jayaraj* thus stands for the proposition that 'the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury.'" *Parisien*, 352 F. Supp. 3d at 233 (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). That reasoning does not apply in this context, because even if GEICO prevails on the merits in this case, it will go uncompensated for the time and expense wasted in the arbitrations and state proceedings, and moreover, will be prejudiced by the risk of inconsistent judgments, and the dissipation and secreting of Wellmart's assets.

judgment, which are key factors underpinning GEICO's arguments here.

Wellmart also cites *Allstate Ins. Co. v. Avetisyan*, in which Judge DeArcy Hall denied Allstate's motion for a preliminary injunction to enjoin defendants from proceeding with or filing new No-Fault collection actions.  No. 17CV04275LDHRML, 2018 WL 6344249, at *1 (E.D.N.Y. Oct. 30, 2018).  Judge DeArcy Hall's decision not to grant an injunction was principally based on a distinction she drew between the line of cases cited by GEICO, including *Elzanaty*, and the facts before her.  In those cases that had granted injunctive relief to stay No-Fault collection proceedings, the courts "relied, at least in part, on the identity of issues between the actions before them and the parallel proceedings to be enjoined."  *Id.* at *4.  "Because of the identity of issues in each of those cases," Judge DeArcy Hall explained, "failing to issue an injunction would have created a real risk of inconsistent judgments."  *Id.*  No such risks existed in *Avetisyan*.  Allstate's federal action was "premised upon an alleged pattern comprising discrete claims of fraudulent activity" by defendants, but the parallel No-Fault collection actions failed to raise fraud.  *Id.*  Accordingly, there was no danger of inconsistent determinations, and even if there was, the harm could be remedied by future money damages in the federal action.  *Id.*  Here, by contrast, GEICO is

challenging the underlying No-Fault claims as fraudulent, but also on the basis that Wellmart has billed for medically unnecessary prescriptions. (Compl. ¶ 1.) Any finding by an arbitration panel that Wellmart has submitted a valid claim would necessarily entail a finding that the underlying prescription was medically necessary, *see* N.Y. Ins. Law §§ 5102(a)(1), (b), and thus conflict if a declaratory judgment were entered in favor of GEICO.

Wellmart further cites two decisions by then-District Judge Bianco, denying applications to enjoin the filing and prosecution of No-Fault arbitrations. *See Allstate Ins. Co. v. E. Island Med. Care, P.C.*, 16 CV 2802 (JFB)(AKT) (June 5, 2017) (ECF No. 106, at 23-24) ("I don't believe that the issues that the Plaintiffs are concerned about here that they've raised demonstrate any irreparable harm or inconsistencies in judgments, and I believe that they can be fully compensated by monetary damages. So for those reasons, I don't believe Plaintiffs have met the irreparable harm requirement."); *Allstate Ins. Co. v. Zelefsky*, 13 CV 5830 (JFB)(AKT) (Apr. 2, 2014) (ECF No. 66, at 54) ("[T]he irreparable harm requirement is not met in this case. We are dealing with money damages. All the things that we've discussed that are in the complaint can all be compensated through money damages."). As with *Harvey*, Judge Bianco's decisions were summary oral rulings. The court

is unable to discern the specific basis for Judge Bianco's conclusion that Allstate was not at risk of irreparable harm, and thus, the *Zelefsky* and *Eastern Island* decisions do not color this court's analysis. Moreover, unlike the cases before Judge Bianco, plaintiffs in the instant action have presented evidence that money damages are not likely to be sufficient, much less available, if plaintiffs prevail.

At bottom, there is one critical fact looming over the proceedings here that is otherwise absent from the cases championed by either party. The record strongly suggests that Wellmart is rendering itself judgment-proof to frustrate any potential money judgment awarded to GEICO. Wellmart's record owner, Ruslan Nektalov, acknowledges that Wellmart has ceased operations and sold its assets in May 2019. (ECF No. 68-16, Declaration of Ruslan Nektalov ("Nektalov Decl.") ¶ 4.) But neither Nektalov, Wellmart, nor Wellmart's counsel states who actually bought Wellmart's assets, and much more importantly, whether the purported buyer assumed Wellmart's liabilities. GEICO is therefore left in the dark about which party can potentially satisfy any judgment awarded in plaintiffs' favor.

Of greater concern, however, is that Wellmart's bank statements strongly suggest the methodical depletion of assets to frustrate a potential judgment. According to Wellmart's

financial records, between June 1, 2018 to May 31, 2019, more than $1.2 million was withdrawn from Wellmart's account. (Wellmart Bank Statements.)  During that time, Wellmart's account balance dwindled from $31,191.24 to $4,361.08.  (*Id.*) The typical withdrawal during this time was a MoneyGram transfer for under $10,000.[3]  Nektalov's explanation for these transactions also smacks of implausibility.  According to him, in order "[t]o better serve the community," Wellmart, a pharmacy, decided to enter an agreement with Moneygram Payment Services whereby "patrons could wire money domestically and internationally and pay bills as well."  (Nektalov Decl. ¶ 6.) "When a [Wellmart] patron wished to transfer money through Moneygram," Wellmart would execute the transfer and the funds for the transfer "would then be debited from Wellmart's checking account . . . ."  (*Id.* ¶¶ 9-10.)

Even crediting Nektalov's explanation that Wellmart sought to better serve its community, it strikes the court as odd that Wellmart would debit these transactions against its own funds.  Moreover, even if Wellmart was merely effectuating

---

[3]    This pattern may also indicate "structuring," which is "a series of cash transactions, each under the reporting ceiling of $10,000.00, at different banks on the same or different days or at the same bank on different days, for the purpose of moving a large aggregate of funds through financial institutions while avoiding the currency reporting requirements." *United States v. All Funds Presently on Deposit or Attempted to be Deposited in any Accounts Maintained at Am. Exp. Bank*, 832 F. Supp. 542, 552 n.6 (E.D.N.Y. 1993).

transfers on behalf of its patrons, and choosing to debit the transactions from a Wellmart account in the process, Wellmart's statements do not show corresponding credits equal to the amounts debited.  It is possible that these concerns can be satisfactorily resolved in discovery, but at this stage, it may be plausibly inferred that Wellmart has deliberately stripped its account of funds, either intentionally or incidentally frustrating GEICO's ability to collect a judgment in the future. If Wellmart is permitted to prosecute ongoing collection proceedings, GEICO's risk may not be limited to inconsistent judgments, or the unnecessary expenditure of time and resources. It is not at all speculative that any dollar awarded to Wellmart in a AAA or state court collection proceeding may be permanently unrecoverable, even if GEICO ultimately prevails in this case.

Accordingly, the court finds GEICO has demonstrated irreparable harm absent a stay.

### B. Serious Questions Going to the Merits

For a preliminary injunction to issue, there must be either "a likelihood of success on the merits," or "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly" in the movant's favor.  *Parisien*, 352 F. Supp. 3d at 234 (E.D.N.Y. 2018) (citing *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*,

596 F.2d 70, 72 (2d Cir. 1979)). "Likelihood of success is not

the focus at the early stages of a case such as this, because

any likelihood of success inquiry would be premature. Instead,

the Court looks to whether there is a serious question going to

the merits to make them a fair ground for trial." *Id.* (quoting

*Elzanaty*, 929 F.Supp.2d at 217); *see also Citigroup Glob. Mkts.,

Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30,

35 (2d Cir. 2010) ("The 'serious questions' standard permits a

district court to grant a preliminary injunction in situations

where it cannot determine with certainty that the moving party

is more likely than not to prevail on the merits of the

underlying claims, but where the costs outweigh the benefits of

not granting the injunction. Because the moving party must not

only show that there are 'serious questions' going to the

merits, but must additionally establish that 'the balance of

hardships tips *decidedly*' in its favor, its overall burden is no

lighter than the one it bears under the 'likelihood of success'

standard.").[4]

---

[4]     With regard to the applicable standard, Wellmart intimates that GEICO's
burden on the merits is even higher than on a motion for summary judgment.
(Opp. 11.)  Wellmart bases this proposition on *Mazurek v. Armstrong*, 520 U.S.
968, 972 (1997), a per curiam Supreme Court decision granting *certiorari*. As
a preliminary matter, it is axiomatic that the Supreme Court's decision to
grant or not to grant *certiorari* in a case carries no precedential effect
whatsoever.  *See Maryland v. Baltimore Radio Show*, 338 U.S. 912, 917-918
(1950) (opinion of Frankfurter, J., respecting denial of *certiorari*).
Regardless, courts merely construe *Mazurek* as requiring a showing of a
likelihood of success or serious questions going to the merits, the standard
usually applicable on motions for a preliminary injunction. *E.g.*, *725 Eatery
Corp. v. City of New York*, 408 F. Supp. 3d 424, 458 (S.D.N.Y. 2019).

Here, GEICO easily meets the threshold of showing a
serious question going to the merits.  Plaintiffs seek a
declaratory judgment that Wellmart has no right to receiving
payment for over $5.7 million in pending bills submitted to
GEICO because, *inter alia*, the billed-for services were
"medically unnecessary and/or were the product of predetermined
fraudulent protocols" untethered to actual and necessary patient
care.  (Compl. ¶ 226.)  GEICO's 262-paragraph complaint
"detail[s] a complicated scheme of alleged fraudulent activity,"
*Elzanaty*, 929 F. Supp. 2d at 222, supported by specific examples
and exhibits.  Paragraph 199 of the complaint provides a
detailed narrative of **_50_** different instances, in which the
Pharmacy Defendants dispensed what appears to have been
excessive amounts of pharmaceutical products, including
Fraudulent Compounded Pain Creams, often without appropriate
documentation or reference to such products in medical reports.
(Compl. ¶ 199; *see also id.* ¶ 99.)  The complaint appends
extensive documentation to support GEICO's claims of fraudulent
and medically unnecessary treatment, including:

- A list of nearly 15,000 allegedly fraudulent claims
  identified by GEICO as of the complaint's filing
  date, (ECF No. 1-3, Compl., Ex. 1);

- Almost 70 pages of prescriptions issued by the
  Prescribing Defendants, which appear to use pre-
  printed "checklist-type" forms that list Wellmart's
  name, address, and contact information, along with

the names of pain creams that GEICO asserts the Pharmacy Defendants have dispensed in violation of federal and state compounding regulations, (ECF No. 1-4, Compl., Ex. 2; Compl. ¶ 81); and

- Prescriptions issued by the Prescribing Defendants using labels or rubber stamps, and which defendants submitted to GEICO in support of the allegedly fraudulent billing, (ECF No. 1-5, Compl., Ex. 3; Compl. ¶ 97.)

Beyond the four corners of GEICO's complaint, GEICO furnished two declarations in support of its contentions that Wellmart submitted claims to GEICO based on defendants' routine prescription of medically unnecessary pharmaceuticals. The first declarant, Barry Root, MD, is a New York-licensed doctor specializing in patients with musculoskeletal injuries. (ECF No. 68-5, Declaration of Barry C. Root, MD ("Root Decl."), ¶ 2.) Dr. Root concluded, based on his review of patient records for 79 individuals insured by GEICO, each of whom received pharmaceuticals dispensed by Wellmart and prescribed by the Prescribing Defendants, that: the pharmaceutical products "were prescribed and dispensed in protocol fashion with little or no relationships to the patients' clinical needs" and in a manner that "reflect[ed] a substandard level of care" that deviated from medical standards, "demonstrate[d] a gross indifference to patient health and safety," and was "designed to exploit the patients[] for financial gain." (*Id.* ¶¶ 4, 5.) The Root Declaration further states that patients were prescribed

excessive pharmaceutical products "based on unsubstantiated, exaggerated diagnoses designed to give the illusion of more complex injuries that require more extensive treatment[.]" (*Id.* ¶ 9.)

GEICO also submitted a declaration by Joanne Magro, MD, a defendant in this case. (*See* ECF No. 68-6, Declaration of Joanne M. Magro, MD ("Magro Decl.").) According to Dr. Magro, as a condition of her employment at certain clinics, including one located in Jamaica, New York and identified in the complaint, she was required to prescribe certain topical pain products, "primarily in the form of compounded pain creams . . . to no-fault patients on a protocol basis." (*Id.* ¶¶ 4, 11.) Dr. Magro adds that, at the end of her shifts, she would sign batches of "preprinted prescription forms for multiple patients," which the clinics' administrative staff had filled out. (*Id.* ¶ 13.)

Collectively, the complaint's detailed allegations and exhibits, along with the Root and Magro Declarations, would likely satisfy the heightened "likelihood of success" standard, but at a bare minimum, easily raise a serious question going to the merits of whether defendants were prescribing medically necessary treatments. *See Parisien*, 352 F. Supp. 3d at 229 ("Facially legitimate treatments may be provided with little

variance across multiple patients, but it is only by analyzing the claims as a whole that the irresistible inference arises that the treatments are not being provided on the basis of medical necessity."); *see also State Farm Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 2010 WL 11475709, at *6-*7, *14 (M.D. Fla. May 24, 2010) (holding that plaintiffs proved fraud based on evidence that 957 patients were subjected to an identical treatment protocol with little deviation).

Wellmart contends that GEICO has not demonstrated serious questions going to the merits, but Wellmart's arguments are unavailing.  On a preliminary note, neither Wellmart, nor any other defendant, moved to dismiss the complaint, and thus, the court is unaware of any threshold legal barriers to GEICO prevailing on the merits.  Wellmart also asserts that GEICO has not submitted admissible evidence in support of its motion, though Wellmart does not actually cite any evidentiary rules that would preclude the sworn Magro and Root Declarations. (Opp. 21—22.)  In any event, "it is well-established that the strict rules of evidence do not apply to a hearing on a motion for a preliminary injunction."  *Sills Rd. Realty LLC v. Town of Brookhaven*, No. CV074584TCPETB, 2008 WL 11449282, at *1 (E.D.N.Y. July 10, 2008) (collecting cases) (citations and brackets omitted); *Zeneca Inc. v. Eli Lilly & Co.*, No. 99 CIV. 1452 (JGK), 1999 WL 509471, at *2 (S.D.N.Y. July 19, 1999)

("[T]he Court may consider hearsay evidence in a preliminary injunction hearing."). Elsewhere, Wellmart attacks the credibility of the Root and Magro Declarations on various grounds. The court will not delve into Wellmart's assertion, however, because even if Wellmart raises potential flaws in plaintiffs' evidentiary showing, these contentions simply raise a question of fact, *i.e.*, a serious question going to the merits.

### C. Balance of Hardships

Given the court's finding that there are "serious questions going to the merits," in lieu of a "likelihood of success on the merits," for a preliminary injunction to issue, the court must further determine if there is a "balance of hardships tipping decidedly" in GEICO's favor. *Parisien*, 352 F. Supp. 3d at 234. If the court grants plaintiffs' motion to enjoin the underlying collection proceedings and GEICO fails to prove its claims, "then, at worst, [Wellmart's] recovery of the no-fault benefits to which they are entitled will be delayed; all [Wellmart] can hope for in pursuing their parallel state lawsuits and arbitrations is to accelerate their receipt of benefits to which they are already entitled." *Id.* at 234–35. However, if Wellmart's pending arbitration and state court collecting proceedings are not stayed, then, as discussed above,

GEICO will suffer irreparable harm, if GEICO proves its claims. Accordingly, the balance of hardships tips decidedly in favor of plaintiffs.

Because GEICO has made the requisite showing for a stay and/or preliminary injunction to issue, GEICO's motion is granted.

### D. Undertaking

Rule 65(c) of the Federal Rules of Civil Procedure provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Though the Rule appears mandatory, an exception to the bond requirement has been crafted for cases involving the enforcement of "public interests" arising out of "comprehensive federal health and welfare statutes." *Pharm. Soc. of State of New York, Inc. v. New York State Dept. of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995). When determining if claims involve the enforcement of public interest, "the nature of the rights being enforced, rather than the nature of the entity enforcing them, is the central consideration in determining whether the bond requirement should be waived under this exception." *Id.* at

1175.  Further, a district court has a wide discretion to dispense with the bond requirement "where there has been no proof of likelihood of harm."  *Donohue v. Mangano*, 886 F. Supp. 2d 126, 163 (E.D.N.Y. 2012).

Although there is no federal health and welfare statute involved in this action, New York's No-Fault insurance statutes are.  "Those laws were designed to protect accident victims regardless of fault by enabling them to obtain necessary medical attention without concern of the ability to pay."  *Mayzenberg*, 2018 WL 6031156, at *10.  In *Mayzenberg*, the court waived the security requirement of Rule 65(c) in light of the systemic nature of the fraud alleged in the complaint and the lack of prejudice to defendants resulting from a preliminary injunction.  *Id.*  The same considerations justify waiving the bond requirement here.

### E. Authority to Enjoin

Wellmart has not challenged or otherwise questioned the court's authority to enjoin new or pending No-Fault collection arbitrations or state court proceedings.  The court thus construes Wellmart's silence on the matter as acceptance of the court's injunction authority.  In any event, the court does not consider either the Federal Arbitration Act, 9 U.S.C. § 2, nor the Anti-Injunction Act, 28 U.S.C. § 2283, as barring its

authority to enjoin pending and future arbitrations, or future state law collection suits.  *Mayzenberg*, 2018 WL 6031156, at \*3–4, 9.

On the other hand, although GEICO notes that 45 collection proceedings are currently pending in state court, GEICO's motion does not explicitly seek to stay the state court proceedings.  Presumably, this omission was deliberate.  *See id.* at \*9 ("Unlike GEICO's position in the No-Fault arbitrations, GEICO is not prevented from asserting its fraud defenses in the state court proceedings because it paid or denied each of Defendants' claims within the required 30-day period under the No-Fault Insurance Law. Therefore, entertaining a new exception to the Anti-Injunction Act is not warranted here. Because GEICO cannot satisfy the 'necessary in aid' of the court's jurisdiction exception to the Act, its motion to stay Defendants' pending state court proceedings is denied.'").  In any event, the court will not grant injunctive relief where it has not been requested.  The court's injunction is therefore limited to pending No-Fault arbitrations arising from alleged fraudulent and medically unnecessary claims identified in Exhibit 1 of the complaint, (ECF No. 1-3), as well as future arbitral and state court collection actions.

**CONCLUSION**

For the reasons set forth above, GEICO's motion, pending resolution of the instant federal action, to stay all pending No-Fault collection arbitrations before the AAA, and to enjoin any future No-Fault collection arbitrations before the AAA, as well as future No-Fault collection lawsuits in New York state courts, is GRANTED. For the avoidance of doubt, the court's Order does not stay pending No-Fault collection lawsuits in New York state courts.

The parties shall proceed to discovery and are hereby referred to Magistrate Judge Mann for all pre-trial matters. Because the court is temporarily staying defendants' rights to commence further No-Fault arbitrations and state court actions, all procedures in this matter should proceed on an expedited basis.

**SO ORDERED.**

Dated:   January 16, 2020
         Brooklyn, New York

                              _____/s/_____
                              **Kiyo A. Matsumoto**
                              United States District Judge