UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, et al.,

                           **Plaintiffs,**           **REPORT AND**
                                              **RECOMMENDATION**
       **-against-**

                                              **19-CV-4414 (KAM)**
WELLMART RX, INC., et al.,

                          **Defendants.**
-------------------------------------------------------------x

       Currently pending before the Court, in this action asserting common law claims and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, is a motion for default judgment filed by plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company (collectively, "GEICO"). <u>See</u> Motion for Default Judgment (Sept. 10, 2021), Electronic Case Filing ("ECF") Docket Entry ("DE") #106. The various defendants are accused of engaging in a single scheme to wrongfully obtain money from GEICO by submitting, or causing to be submitted, fraudulent no-fault insurance claims for medically unnecessary pain-relieving prescription drug products purportedly provided to GEICO-insured patients involved in automobile accidents. GEICO originally asserted claims against fourteen named defendants, but the claims against thirteen defendants have been resolved and the only remaining defendant is the subject of the instant motion, Rafael Delacruz-Gomez, M.D. ("Delacruz-Gomez" or the "defaulting defendant").

       The Honorable Kiyo A. Matsumoto, the District Judge to whom this case is assigned, referred GEICO's motion to the undersigned magistrate judge for a report and recommendation. <u>See</u> Order Referring Motion (Apr. 4, 2022). For the reasons that follow,

this Court respectfully recommends that the District Court grant in part and deny in part GEICO's motion for default judgment.

## BACKGROUND AND FACTS

New York State's "no-fault" law created an insurance system to provide medically necessary healthcare services to persons injured in motor vehicle accidents ("Insureds").   See Complaint (July 31, 2019) ("Compl.") ¶ 35, DE #1.   GEICO, which underwrites automobile insurance, see id. ¶ 34, is obligated under the "no-fault" law and implementing regulations to provide personal injury benefits ("No-Fault Benefits") to Insureds for necessary expenses in amounts up to $50,000 per person, see GEICO v. Wellmart RX, Inc., 435 F.Supp.3d 443, 446 (E.D.N.Y. 2020); see also N.Y. Ins. Law §§ 5101-5109; 11 N.Y.C.R.R. §§ 65-1.1 through 65-5.5 (collectively, the "No-Fault Law").   Insureds may assign their rights to No-Fault Benefits to healthcare service providers in exchange for healthcare services, and such assignment allows the provider to receive payment directly from the insurance company.   See 11 N.Y.C.R.R. § 65-3.11(a).

On July 31, 2019, GEICO commenced this action against fourteen named defendants, along with John Doe Nos. "1" through "5," alleging that they had engaged in a scheme to defraud GEICO through their involvement in the submission of false and/or fraudulent insurance claims on behalf of injured persons allegedly covered by New York's No-Fault Law. See Compl.   GEICO alleges that defendants engaged in a fraudulent scheme whereby, in exchange for kickback payments, medical professionals (the "prescribing defendants"), including defendant Delacruz-Gomez, prescribed medically unnecessary pain-relieving products to individuals insured by GEICO who had allegedly been involved in motor vehicle

2

accidents.   See id. ¶¶ 59-60.   The medically unnecessary prescriptions written by the prescribing defendants were filled by defendant Wellmart Rx, Inc. ("Wellmart Rx" or "Wellmart"), overseen by its alleged owners, defendants Simon Davydov and Ruslan Nektalov (collectively, with Wellmart Rx, the "pharmacy defendants"), who in turn charged GEICO inflated rates for the products under the No-Fault Law.   Id. ¶¶ 59-60, 64.   GEICO alleges that, since 2015, the pharmacy defendants have submitted more than $7.3 million in fraudulent billing to GEICO for medically unnecessary pharmaceutical products.   Id. ¶ 1.

According to the Complaint, the aforesaid medically unnecessary pain-relieving products were expensive compounded pain creams and ointments.   Id. ¶ 60.   These compounded pain creams and ointments are not generally regulated by the Food and Drug Administration in the same way as most prescription and over-the-counter drugs.   Id. ¶¶ 50-52.   A pharmacy is allowed to compound different pain-relieving products for a patient, but only if the compounded drug is tailored to that patient's specific needs, and only if all other traditional methods of treatment have failed.   Id. ¶ 74.   Rather than following that protocol, the pharmacy defendants are alleged to have produced the compounded pain products in bulk, solicited the prescribing defendants to prescribe those compounded products to individuals without regard for actual patient care, and then charged GEICO inflated rates for the products. Id. ¶ 79.   In fact, alternatives to the drugs that comprise the compounded products prescribed in the alleged fraudulent scheme are often available over the counter for a fraction of the price. Id. ¶ 102.   In addition, the prescribing defendants prescribed and supplied patients (who often were being prescribed other pain medications) with various pain patches for which GEICO was billed at exorbitant prices, even though other less expensive options were available.   Id. ¶¶ 4, 174-180.

The Complaint further alleges that the prescribing defendants created generic examination reports of patients in order to prescribe them the medically unnecessary pain-relief products.  Id. ¶¶ 68–72.  These prescriptions were made to further the defendants' scheme without regard to the patients' actual needs.  Id. ¶ 71.  Evidencing the prescribing defendants' indifference to patient care, they often used preprinted pads or labels to prescribe the fraudulent pain products to patients, rather than considering each patient's individual needs.  Id. ¶¶ 80-86, 96-97, 99.  Further, the records for the patients treated by the prescribing defendants in this matter did not reflect any health benefit of using the fraudulent pain products.  Id. ¶ 69.  By its Complaint, GEICO seeks recovery for at least $1,190,700 in fraudulent bills paid to Wellmart Rx.[1]   Id. ¶¶ 6, 222.

The pleading identifies ten prescribing defendants—seven New York-licensed physicians and three physician assistants—in addition to Delacruz-Gomez, the defaulting defendant.  See id. ¶ 2.  GEICO has entered into settlement agreements with some of the defendants, and voluntarily discontinued its claims against others.  See [Sealed] Reply in Support (May 17, 2022) ("Sealed Summary of Settlements"), DE #109; Stipulation of Dismissal (Apr. 13, 2021), DE #104; Notice of Voluntary Dismissal Without Prejudice (Apr. 8, 2021), DE #100; Stipulation of Dismissal (Oct. 27, 2020), DE #99; Stipulation of Dismissal (Oct. 7, 2020), DE #96; Stipulation of Dismissal (Sept. 10, 2020), DE #95; Stipulation of Dismissal (Sept. 3, 2020), DE #93; Stipulation of Dismissal (Aug. 31, 2020), DE #92; Stipulation of Dismissal (Aug. 31, 2020), DE #91; Stipulation of Dismissal (July 17, 2020),

---

[1] In the instant motion, GEICO seeks to recover three times the sum of $1,230,243.98 that GEICO paid to Wellmart Rx in reliance on its fraudulent billing.  See Memorandum in Support of Plaintiffs' Renewed Motion for Default Judgment (Sept. 10, 2021) ("Pl. Mem.") at 4, DE #106-7.  However, the proposed Judgment submitted by GEICO contains inconsistent damages amounts of $1,190,700.00 and $1,230,243.98.  See Proposed Judgment (Sept. 10, 2021), DE #106-5 at ECF pp. 1-2.

DE #88; Stipulation of Dismissal (July 15, 2020), DE #87.

Delacruz-Gomez, the defaulting defendant, was properly served with the summons and Complaint, see Summons Returned Executed (Sept. 17, 2019), DE #38, and, according to GEICO's counsel, the default motion papers were served upon him by mail at his last known addresses, see Affidavit of Service (Sept. 10, 2021), DE #106-8; Declaration of Jennifer Abreu (Sept. 10, 2021) ¶ 22, DE #106-1.   Delacruz-Gomez has neither responded to the Complaint nor otherwise appeared in this action.

## DISCUSSION

### I.    Default Judgment Standard

After the Clerk of the Court enters a Certificate of Default, the District Court may, on a plaintiff's application, enter a default judgment if a defendant "has failed to plead or otherwise defend" an action.   See Fed. R. Civ. P. 55(a)-(b).   Nevertheless, "[j]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." Rosas v. Cuzco Cap. Inv. Mgmt., LLC, 19-CV-6180(KAM)(SJB), 2021 WL 878862, at *2 (E.D.N.Y. Mar. 9, 2021) (internal quotation marks and citation omitted).

Although a defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability," Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), a default does not establish "that the alleged facts constitute a valid cause of action," TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd., 536 F.App'x 45, 46 (2d Cir. 2013) (internal quotation marks and citation omitted).   A pleading's legal conclusions are not assumed to be true, and, on a motion for default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief.   See City of New York

v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128, 137 (2d Cir. 2011) ("A district court need not agree that the alleged facts constitute a valid cause of action."); Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (district court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law"); Chen v. JP Standard Constr. Corp., 14-CV-1086 (MKB), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016), adopted, 2016 WL 2758272 (E.D.N.Y. May 12, 2016).   "Thus, a defendant's default does no more than concede the complaint's well-pleaded factual allegations; it remains the plaintiffs' burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."   Mateo v. Universal Language Corp., No. 13–CV–2495 (NGG)(JO), 2015 WL 5655689, at *4 (E.D.N.Y. Sept. 4, 2015), adopted, 2015 WL 5664498 (E.D.N.Y. Sept. 24, 2015).   In that regard, a well-pleaded complaint "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (collecting cases).

On a motion for default judgment, the facts alleged in the pleading are not assumed to be true in assessing the plaintiff's right to the relief requested.   See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).   In other words, even if the defendant is found to be liable, the defendant's default is not considered an admission of the plaintiff's entitlement to an award of damages.   See Greyhound, 973 F.2d at 158.

## II.   Liability

### A.   Liability Under the RICO Statute

GEICO alleges that Wellmart Rx is a racketeering enterprise operated by its owners,

defendants Davydov and Nektalov, that dispensed fraudulent pain medication to patients and submitted fraudulent insurance claims to GEICO through the mail.   See Compl. ¶¶ 229-233. Delacruz-Gomez, the defaulting defendant, along with other prescribing defendants, prescribed the fraudulent pain-relief products to GEICO's insureds and directed those prescriptions to Wellmart Rx, for which they allegedly were paid kickbacks, or given other financial incentives.   See id. ¶¶ 188, 199, 230, 238.   Accordingly, GEICO alleges that defendants Davydov and Nektalov committed a substantive violation of the RICO statute, 18 U.S.C. § 1962(c), by conducting the Wellmart Rx enterprise through a pattern of racketeering activity, see Compl. ¶ 230 (Second Claim for Relief).   GEICO further alleges that each of the prescribing defendants, including the defaulting defendant, along with defendants Davydov and Nektalov, conspired to violate the RICO statute, 18 U.S.C. § 1962(d), by agreeing to conduct or participate in the affairs of Wellmart Rx through a pattern of racketeering activity, see Compl. ¶ 238 (Third Claim for Relief).   The Complaint does not charge the defaulting defendant, or any of the prescribing defendants, with a substantive RICO violation. Nevertheless, in connection with GEICO's RICO conspiracy claim, GEICO seeks damages against Delacruz-Gomez, the sole remaining defendant and an alleged member of the conspiracy, "for the full amount of damages" attributable to acts committed by each and every defendant, including for prescriptions that Delacruz-Gomez did not write and for the submission of insurance claims for which he received no benefit.   See Pl. Mem. at 8, 23; see also Supplemental Submission (June 9, 2022) ("Pl. Supp.") at 1, DE #112.   That is, GEICO requests damages against Delacruz-Gomez in the amount of $1,230,243.98 that GEICO paid to the pharmacy defendants in connection with prescriptions written by each and every prescribing defendant, trebled to $3,690,731.94 under RICO, see Pl. Mem. at 8, 23, even

though the "total monies paid to Wellmart Rx by GEICO, in connection with prescriptions issued by Dr. Delacruz-Gomez[,] is $43,342.37[,]" Pl. Supp. at 1.

As Judge Matsumoto recently observed, "[c]ourts have cautioned that RICO is 'an unusually potent weapon—the litigation equivalent of a thermonuclear device.'" Rajaratnam v. Motley Rice, LLC, 449 F.Supp.3d 45, 64 (E.D.N.Y. 2020) (quoting Halvorssen v. Simpson, 2:18-cv-2683 (ENV) (RLM), 2019 WL 4023561, at *3 (E.D.N.Y. Aug. 26, 2019)). "Given the 'powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of civil RICO' due to 'the allure of treble damages, attorney's fees, and federal jurisdiction,' courts must 'scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud.'" Rajaratnam, 449 F.Supp.3d at 64 (quoting Holmes v. Parade Place, LLC, No. 12-CV-6299 (GBD) (DF), 2013 WL 5405541, at *14 (S.D.N.Y. Sept. 26, 2013)). For the reasons that follow, having scrutinized GEICO's RICO conspiracy claim in this case, this Court concludes that the Complaint fails to plausibly allege Delacruz-Gomez's liability for the sprawling RICO conspiracy pled by GEICO.

### 1. *Substantive RICO Claim*

Although the pleading does not contain a substantive RICO cause of action against Delacruz-Gomez (or any of the prescribing defendants), discussion of the substantive RICO claim helps to frame the analysis of the RICO conspiracy claim.   The substantive RICO offense that all defendants are alleged to have conspired to violate provides in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

18 U.S.C. § 1962(c).   While RICO is a criminal statute, section 1964(c) affords to those

injured by the conduct proscribed in that statute the right to bring a civil suit for triple damages

and costs, including attorneys' fees.   See 18 U.S.C. § 1964(c).

     To sustain a substantive civil RICO claim, a plaintiff must, as an initial matter, allege

the existence of each of the following seven elements:   "(1) that the defendant (2) through

the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity'

(5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an

'enterprise' (7) the activities of which affect interstate or foreign commerce."   Town of West

Hartford v. Operation Rescue, 915 F.2d 92, 100 (2d Cir. 1990) (citation omitted); see

DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001).   Additionally, the plaintiff must

allege that he was "injured in his business or property by reason of a violation of section

1962."   18 U.S.C. § 1964(c); see DeFalco, 244 F.3d at 329; Lerner v. Fleet Bank, N.A.,

318 F.3d 113, 120 (2d Cir. 2003).

     The term "enterprise" includes both a "legal entity" and an association-in-fact that is

not a legal entity.   18 U.S.C. § 1961(4).   In order to establish liability for a substantive

RICO violation under section 1962(c), a plaintiff must allege and prove that the "person" or

RICO defendant – including an entity defendant – is distinct from the alleged RICO

enterprise.   See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 162-63 (2001).

     "Racketeering activity" is defined under RICO as any act indictable under an array of

federal criminal statutes.   See 18 U.S.C. § 1961(1).   To constitute a "pattern of racketeering

activity," there must be at least two predicate acts meeting the definition of racketeering

activity.   18 U.S.C. § 1961(5).   The "pattern" element may be satisfied by either closed-

ended or open-ended continuity.   See H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S.

229, 241-42 (1989).   "A party alleging a RICO violation may demonstrate continuity over a

closed period by proving a series of related predicates extending over a substantial period of

time."   Id. at 242.   Alternatively, the "continuity" requirement may be satisfied "by

demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of

continuing criminal conduct beyond the period during which the predicate acts were

performed."   Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir.

2008).   "Where an inherently unlawful act is performed at the behest of an enterprise whose

business is racketeering activity, there is . . . open-ended continuity."   DeFalco, 244 F.3d at

323.

       To sustain a substantive RICO charge under section 1962(c), the plaintiff must also

establish that the defendants "participated in the operation or management of the enterprise

itself."   First Cap. Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 176 (2d Cir. 2004)

(quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 521 (2d Cir. 1994)).   The "operation

or management" test is satisfied "not just by upper management but also by lower rung

participants in the enterprise who are under the direction of upper management."   Reves v.

Ernst & Young, 507 U.S. 170, 184 (1993).   The defendant must, however, play "some part

in directing [the enterprise's] affairs."   Id. at 179.   In the Second Circuit, "the 'operation or

management' test typically has proven to be a relatively low hurdle for plaintiffs to clear,

especially at the pleading stage."   First Capital, 385 F.3d at 176 (internal citations omitted).

        The allegations in the instant Complaint suffice to establish that Davydov and Nektalov

are each distinct RICO "persons," who operated a corporate entity (Wellmart Rx) as a RICO

"enterprise." See Allstate Ins. Co. v. Aminov, No. 11-CV-2391 (MKB), 2014 WL 527834, at *5 n.9 (E.D.N.Y. Feb. 7, 2014); GEICO v. AMD Chiropractic, P.C., No. 12-cv-4295 (NG)(JO), 2013 WL 5131057, at *6 (E.D.N.Y. Sept. 12, 2013).   Moreover, GEICO adequately alleges that the Wellmart Rx enterprise affected interstate commerce and had common perpetrators and victims over a period of years.   See Compl. ¶¶ 59-223.

The pleading further establishes that Wellmart Rx was used by its owners, defendants Davydov and Nektalov, to defraud GEICO.   The Complaint adequately alleges the two co-owners' operation and management of the enterprise.   See GEICO v. Ajudua, 15-CV-5199 (MKB), 2018 WL 7252961, at *7 (E.D.N.Y. Dec. 18, 2018), adopted, 2019 WL 276201 (E.D.N.Y. Jan. 22, 2019); Allstate Ins. Co. v. Smirnov, No. 12-CV-1246 (CBA), 2013 WL 5407224, at *9 (E.D.N.Y. Aug. 21, 2013); AMD Chiropractic, 2013 WL 5131057, at *7. Specifically, Davydov and Nektalov are alleged to have used the enterprise to violate the federal mail fraud statute, see Compl. ¶ 230, which makes it a crime to use the "mails in the execution of 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises[,]'"   Allstate Ins. Co. v. Howell, No. 09 CV 4660(RJD)(VVP), 2013 WL 5447152, at *5 (E.D.N.Y. Sept. 30, 2013) (quoting 18 U.C.S. § 1341(a)).   Mail fraud is included within the statutory definition of racketeering activity.   See 18 U.S.C. § 1961(1).   By mailing numerous fraudulent insurance claims to GEICO, Wellmart Rx's owners violated the mail fraud statute, satisfying the two predicate acts required for a pattern of racketeering under RICO.   Indeed, a necessary component of the scheme to defraud was the mailing to GEICO of statutorily prescribed claim forms for No-

11

Fault Benefits.   Finally, GEICO has sufficiently pled that the owner-defendants' RICO violations injured GEICO by causing it to pay insurance benefits for fraudulent claims.

GEICO therefore has adequately alleged the elements of Davydov's and Nektalov's commission of a substantive RICO violation.

### 2.   *RICO Conspiracy*

In their Third Claim for Relief, GEICO alleges that Davydov, Nektalov and all of the prescribing defendants "combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Wellmart Rx enterprise's affairs[.]"   Compl. ¶ 238.   In contrast to the substantive RICO claim naming only the enterprise's two owners as defendants, this count sweeps far too broadly to state a plausible claim for relief.

To state a conspiracy claim under section 1962(d), a plaintiff must allege that the defendants "agree[d] to conduct or to participate in the conduct of [an] enterprise's affairs through a pattern of racketeering activity."   United States v. Zemlyansky, 908 F.3d 1, 11 (2d Cir. 2018) (quoting United States v. Pizzonia, 577 F.3d 455, 462 (2d Cir. 2009)).   "A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense[.]"   Salinas v. United States, 522 U.S. 52, 65 (1997).   More specifically, the pleading must allege: (a) "an agreement to join a racketeering scheme," (b) "the defendant's knowing engagement in the scheme with the intent that its overall goals be effectuated," and (c) "that the scheme involved, or by agreement between any members of the conspiracy was intended to involve, two or more predicate acts of racketeering."   Zemlyansky, 908 F.3d at 11; see Allstate Ins. Co. v. Batsiyan, CV 05-5933

(SJ) (VVP), 2008 WL 11434462, at *8 (E.D.N.Y. Mar. 12, 2008) ("To plead a RICO conspiracy, a claimant must plead facts establishing the existence of an agreement, as well as facts demonstrating that the defendants understood the scope of the enterprise and knowingly agreed to further its aims through the commission of the offenses.").

Courts in the Second Circuit (and elsewhere) have repeatedly rebuffed attempts to predicate RICO liability on allegations showing only a rimless hub-and-spoke conspiracy. See, e.g., D'Addario v. D'Addario, 901 F.3d 80, 101 (2d Cir. 2018) (collecting cases); Moss v. BMO Harris Bank, N.A., 258 F.Supp.3d 289, 303 (E.D.N.Y. 2017) (Bianco, J.) (dismissing RICO substantive and conspiracy claims where plaintiff asserted "[a]t best . . . a rimless 'hub and spokes' relationship between defendant [bank] and payday lenders . . . that courts have consistently found insufficient to state a RICO claim").   A conspiracy with a hub-and-spoke structure exists where one entity or individual or group thereof (the hub) transacts similarly with several other entities or individuals (the spokes) pursuant to a scheme that typically is designed by the hub.   See United States v. Apple, Inc., 791 F.3d 290, 314 (2d Cir. 2015).   "Rimless" means that there lacks some connection among the conspiracy's various spokes.   See D'Addario, 901 F.3d at 101.   In other words, no RICO conspiracy exists "when each defendant is alleged to have a relationship with a central figure, but the defendants are not all alleged to be connected in some overarching way (such as by 'an agreement to further a single design or purpose')."   Id. (citation omitted).

The prohibition against hub-and-spoke RICO conspiracies usually focuses on the pleading's failure to establish that an *enterprise-in-fact* was formed among unrelated

13

defendants; GEICO attempts to circumvent that prohibition in the instant action by pleading that the enterprise consists solely of defendant Wellmart Rx.[2]  When properly pled, an association-in-fact enterprise, by definition, implies an agreement among its constituent defendants, whose association with one another creates the enterprise.  See Pizzonia, 577 F.3d at 463-64 (evidence used to prove "conspiratorial agreement to engage in racketeering" may "coalesce" with evidence used to establish enterprise).  Here, on the other hand, in the absence of an association-in-fact enterprise to connect the various prescribing defendants in connection with the RICO conspiracy claim, the Complaint alleges, and must include facts to plausibly establish, a single conspiracy among the prescribing defendants and the owners of the pharmacy enterprise.  See United States v. Ernst, 502 F.Supp.3d 637, 658-69 (D. Mass. 2020) ("as the Superseding Indictment does not contend that Defendants are part of the alleged enterprise, the government will need to prove a single conspiracy to obtain a conviction for the charged RICO conspiracy and cannot simply rely on the enterprise for the missing link"); cf. Boyle v. United States, 556 U.S. 938, 947 n.4 (2009) (where "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates[,] . . . [p]roof of these patterns would not be enough to show that the individuals were members of an enterprise").  As discussed below, the Complaint is devoid of any factual assertions of relationships among the various prescribing defendants, and thus fails to adequately allege such a single conspiracy.

---

[2] Co-conspirators such as the prescribing defendants herein need not be included within the definition of the alleged enterprise.  See Reves, 507 U.S. at 185.

a. *Agreement*

A "RICO conspiracy requires allegations that the defendant agreed to participate in a charged enterprise's affairs through a pattern of racketeering, not a conspiracy to commit predicate acts." *In re* Trilegiant Corp., Inc., 11 F.Supp.3d 82, 108 (D. Conn. 2014) (inner quotation marks and citations omitted), aff'd sub nom. Williams v. Affinion Group, LLC, 889 F.3d 116 (2d Cir. 2018). In other words, a RICO conspiracy "is an agreement to conduct or to participate in the conduct of a charged enterprise's affair through a pattern of racketeering." Pizzonia, 577 F.3d at 464. When "[t]he partners in the criminal plan . . . agree to pursue the same criminal objective and . . . divide up the work, . . . each is responsible for the acts of each other." Salinas, 522 U.S. at 63-64. Because opting into and participating in a RICO conspiracy will thus result in liability for the acts of one's co-conspirators, a RICO conspiracy claim will not survive a motion to dismiss where the pleading alleges "no facts to show specifically that the defendants had any 'meeting of the minds' in the alleged violations." 4 K & D Corp. v. Concierge Auctions, LLC, 2 F.Supp.3d 525, 545 (S.D.N.Y. 2014).

As a matter of hornbook law, a "complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). As a corollary to this firmly established principle, in order to state a plausible RICO conspiracy claim, the pleading must set forth more than conclusory allegations that the

defendants "agreed to commit" the violations.   See Limtung v. Thomas, 19-CV-3646 (RPK) (MMH), 2021 WL 4443710, at *8 (E.D.N.Y. Sept. 28, 2021); Abbott Labs. v. Adelphia Supply USA, 15-CV-5826 (CBA) (LB), 2017 WL 57802, at *9 (E.D.N.Y. Jan. 4, 2017) ("conclusory allegations of knowledge and agreement are insufficient"); see also Hecht v. Com. Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir. 1990) ("the complaint must allege some factual basis for a finding of a conscious agreement among the defendants"). Furthermore, "the mere allegation that defendants engaged in 'parallel conduct,' standing alone, 'affords an insufficient basis for inferring that an agreement was reached.'"   Elsevier Inc. v. Memon, 97 F.Supp.3d 21, 34 (E.D.N.Y. 2015) (quoting Elsevier, Inc. v. W.H.P.R., Inc., 692 F.Supp.2d 297, 313 (S.D.N.Y. 2010)) (dismissing RICO conspiracy claim); see also Twombly, 550 U.S. at 556-57 ("Without more, parallel conduct does not suggest conspiracy.").

        The Complaint in this case, while expansive in length, see, e.g., Compl. ¶ 199, contains only conclusory allegations that the prescribing doctors, including Delacruz-Gomez, agreed among themselves to violate RICO, see id. ¶ 239 ("Davydov, Nektalov, and the Prescribing Defendants knew of, agreed to and acted in furtherance of the common and overall objective").   The nonconclusory allegations establish only that Wellmart Rx and its owners engaged in similar (but separate) schemes with each of the eleven prescribing defendants.   The only alleged connection between the prescribing defendants—that they each wrote prescriptions that were filled by Wellmart Rx—is insufficient to establish the broad RICO conspiracy pled by GEICO.   See Abbott, 2017 WL 57802, at *4 ("[N]o alleged facts support an inference that the

entities were acting in any way but in their own independent interests.   Glaringly absent are

allegations of 'interpersonal relationships or common interest.'"); <u>In re</u> <u>Trilegiant Corp.</u>, 11

F.Supp.3d at 109 ("Plaintiffs never allege, however, how or when all of the Defendants

formed such an agreement. . . .   [T]hey do not allege one agreement where all of the

Defendants conspired together to engage in one fraudulent scheme."); <u>accord</u> <u>Kadow v. First</u>

<u>Fed. Bank</u>, Case No. 8:19-cv-00566-PWG, 2020 WL 5230560, at *10 (D. Md. Sept. 2, 2020)

("the allegations that [the enterprise] repeated the same alleged schemes with other lenders

does not put the Defendant here in a RICO conspiracy"); <u>see</u> <u>also</u> <u>Kotteakos v. United States</u>,

328 U.S. 750, 754-55 (1946) (rejecting theory of single conspiracy where "no connection was

shown between" co-conspirators, other than use of common agent).   Simply put, the facts

alleged in the instant Complaint describe a series of "single two-party conspiracies" between

the owner/managers of the Wellmart Rx enterprise and each prescribing defendant, with each

prescribing defendant committing similar but independent frauds in order to benefit himself or

herself and not to benefit any other prescribing defendant.   "While such allegations may imply

a relationship between each [prescribing] [d]efendant and the [owners of Wellmart Rx], one

cannot infer that the [prescribing] [d]efendants acted in a coordinated manner by receiving

common benefits."   <u>Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.</u>, 15-cv-3784 (PKC), 2016

WL 6110565, at *8 (S.D.N.Y. Aug. 4, 2016); <u>see</u> <u>New York Auto. Ins. Plan v. All Purpose</u>

<u>Agency & Brokerage, Inc.</u>, No. 97 Civ 3164(KTD), 1998 WL 695869, at *6 (S.D.N.Y. Oct.

6, 1998).

Moreover, the conduct of Delacruz-Gomez, the defaulting defendant, is not identical to that of the other prescribing defendants, a circumstance that, were it otherwise, might imply some concerted action.   Indeed, although the Complaint alleges that the prescribing defendants "often us[ed] labels, rubber stamps or preprinted template prescription forms generated and supplied to them by the Pharmacy Defendants[,]" Compl. ¶ 2, the "rubber-stamped" prescriptions written by Delacruz-Gomez differed in both content and appearance from almost all of the prescriptions written by the other prescribing defendants, compare DE #1-5 at ECF pp. 3-9 (Delacruz-Gomez prescriptions) with DE #1-4 and DE #1-5 at ECF pp. 16-46.[3]

As discussed further in the subsection that follows, the factual allegations in the Complaint fail to show the prescribing defendants' knowledge of each other, or that their conduct personally benefitted one another.   See Abbott, 2017 WL 57802, at *9 ("mere knowledge of the scheme, even coupled with personal benefit, is not enough to impose liability for a RICO conspiracy"); Nasik Breeding & Research Farm Ltd. v. Merck & Co., 165 F.Supp.2d 514, 541 (S.D.N.Y. 2001); New York Auto. Ins., 1998 WL 695869, at *6 ("it appears that the Insureds each committed similar but independent frauds with the aid of the

---

[3] All of the representative Delacruz-Gomez prescriptions appended to the Complaint involved a single medication, Diclofenac Gel; most of the representative prescriptions associated with the other prescribing defendants were for other or multiple medications.

Interestingly, in a similar action filed by GEICO in this District, upon which GEICO relies, see infra pp. 25-26, Delacruz-Gomez is alleged to have conspired with a different group of medical professionals and a different pharmacy to conduct a similar scheme involving the fraudulent prescription of "pain relieving" pharmaceuticals. See GEICO v. Direct RX Pharmacy Inc., 19-cv-5876(DG) (LB).   Yet, in that action, in which GEICO alleges that an entirely different set of pharmacy defendants provided the prescribing defendants with "preprinted labels or rubber stamps[,]" see Compl. ¶ 2, DE #1 in 19-cv-5876, the representative prescription written by Delacruz-Gomez for Diclofenac Gel bears the same exact "rubber stamp" as his prescriptions at issue in this case, see DE #1-4 at ECF p. 31 in 19-cv-5876.

Producer-Defendants, and that each Insured acted on a particular occasion to benefit himself or herself and not to benefit any other insured"); First Nationwide Bank v. Gelt Funding, Corp., 820 F.Supp. 89, 98 (S.D.N.Y. 1993) ("several borrowers each committed a similar but independent fraud with the aid of a particular lender, and [] each such borrower acted on a particular occasion to benefit himself or herself and not to assist any other borrower"), aff'd, 27 F.3d 763 (2d Cir. 1994).

In sum, to properly state a conspiracy claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." Twombly, 550 U.S. at 556. GEICO has failed to allege the requisite facts to show any meeting of the minds among any of the prescribing defendants regarding the alleged RICO violations. See Wolhendler v. Goldberg, 19-cv-457 (RPK) (CLP), 2020 WL 5658790, at *7 (E.D.N.Y. Sept. 23, 2020) (dismissing RICO claim for failing to allege facts to show that defendants had any "meeting of the minds" in connection with the alleged violations); Abbott, 2017 WL 57802, at *9; Wood v. Gen. Motors Corp., No. 08 CV 5224(PKC)(AKT), 2015 WL 1396437, at *10 (E.D.N.Y. Mar. 25, 2015); 4 K & D Corp., 2 F.Supp.3d at 545 (dismissing RICO conspiracy claim that contained "one conclusory allegation that the defendants 'agreed' to commit the violations"); Elsevier Inc., 692 F.Supp.2d at 313 (dismissing complaint that "contains nothing more than a conclusory allegation of an agreement among defendants and a further allegation that each of the individual defendants committed certain discrete acts of fraud"); FD Prop. Holding, Inc. v. U.S. Traffic Corp., 206 F.Supp.2d 362, 373-74 (E.D.N.Y. 2002) ("Plaintiffs' allegation of an agreement without more is inadequate to state a claim for RICO conspiracy."); Nasik

19

Breeding, 165 F.Supp.2d at 541 (dismissing section 1962(d) claim because complaint "failed to provide specific allegations supporting an inference that each defendant knowingly agreed to participate in a conspiracy").

        b.   *Knowledge*

Nor has GEICO sufficiently alleged that the defaulting defendant knew of "the broader [RICO] conspiracy." See United States v. Viola, 35 F.3d 37, 44 (2d Cir. 1994). In order to sufficiently allege the requisite knowledge on the part of a RICO conspirator, the pleading must show "that the defendant know[s] the general nature of the enterprise and know[s] that the enterprise extends beyond his individual role." Id. (quoting United States v. Rastelli, 870 F.2d 822, 828 (2d Cir. 1989)).

Here, however, the Complaint provides no factual basis on which to infer that Delacruz-Gomez knew about any of the other members of the conspiracy beyond the two owners and operators of the Wellmart Rx enterprise. See Viola, 35 F.3d at 44 ("While [defendant] need not have known each member of the conspiracy to be associated with it, the lack of affiliation beyond the [head of the enterprise], while not dispositive, is relevant to whether [defendant] actually was aware of the broader enterprise[.]"); Rastelli, 870 F.2d at 827 (degree of defendant's association with other conspirators and his participation with them in activities that furthered enterprise's affairs are relevant to whether defendant had requisite knowledge of the general nature of the RICO enterprise); Abbott, 2017 WL 57802, at *9 ("conclusory allegations of knowledge and agreement are insufficient").

Significantly, the Complaint avers that the prescribing defendants "work[ed] at various multidisciplinary medical clinics located in Brooklyn, Queens and the Bronx[,]" Compl. ¶ 16, and Valley Stream, New York, see id. ¶ 61.   Inasmuch as the prescribing defendants are not alleged to have worked out of a single clinic, but instead were spread out at clinics across New York City and beyond, see id. ¶ 61, the fact that Delacruz-Gomez participated in fraudulent activity similar to that of other physicians in other locations affords no basis for assuming that Delacruz-Gomez had knowledge of the scope of the Wellmart Rx enterprise—let alone that he agreed with other prescribers to "conduct the affairs" of the pharmacy through a pattern of racketeering activity.[4]   See Abbott Labs., 2017 WL 57802, at *5 ("When there is parallel conduct of the same nature in the same timeframe by different actors in different locations, it is all too facile for plaintiffs to claim a RICO violation.") (internal quotation marks and citation omitted).

Nor is there anything about the transactions in which Delacruz-Gomez participated that "logically would lead him to suspect" that the conspiracy extended beyond his individual role with Wellmart Rx, given the absence of allegations that he had direct knowledge of the additional Wellmart Rx prescriptions cited in the attachments to the Complaint.   See Viola, 35 F.3d at 44-45.   In fact, in a declaration *proffered by GEICO* in support of its motion for a preliminary injunction in this case, one of the alleged co-conspirators/prescribing defendants avers that she "did not choose which pharmacies would be used to fill [Diclofenac 3% Gel]

---

[4] Notably, the pleading's examples of fraudulent prescriptions issued by Delacruz-Gomez describe patients treated by him at two medical clinics at which no other prescribing defendant is alleged to have treated patients.   See Compl. ¶ 199, pp. 55-57.

prescriptions" and had no knowledge as to "which pharmacies filled the prescriptions [she] was required to authorize."   Declaration of Joanne M. Magro, M.D. (Jan. 3, 2020) ¶ 17, DE #68-6.   The Complaint thus lacks factual allegations that the prescribing defendants "functioned as a unit for the common purpose" of having Wellmart Rx submit fraudulent claims to GEICO, or that Delacruz-Gomez knew what Wellmart Rx was "up to" beyond his own role in writing prescriptions.   Viola, 35 F.3d at 44; see Dynarex Corp. v. Farrah, 18 CV 7072 (VB), 2019 WL 2269838, at *3 (S.D.N.Y. May 28, 2019) (dismissing RICO claim alleging "a classic rimless hub-and-spoke conspiracy[,]" and noting the absence of factual allegations that most of the defendants, based in various locations, "were even aware of each other's existence"); Schmidt v. Fleet Bank, 16 F.Supp.2d 340, 354 (S.D.N.Y. 1998); cf. United States v. White, 7 F.4th 90, 100 (2d Cir. 2021) (affirming conviction for RICO conspiracy where defendant "spent time with other [gang] members at the stash house" where gang members "kept guns, sold drugs, and discussed their exploits"); United States v. Arrington, 941 F.3d 24, 37 (2d Cir. 2019) (citing evidence that defendant offered gang member a "family price" to retaliate against a robber who stole drugs from gang member, court affirms RICO conspiracy conviction where defendant "knew that his associates were involved in the drug trafficking business" and "functioned as a unit for the common purpose of selling drugs"); United States v. Yannotti, 541 F.3d 112, 122 (2d Cir. 2008) (finding evidence sufficient to prove defendant's agreement to the broader pattern of racketeering where defendant "was formally inducted as a 'soldier' into the Gambino Crime Family at a ceremony

in which inductees pledged themselves to use *any* means necessary to further the objectives of the Family").

c.      *Cases Cited By GEICO*

GEICO cites a series of cases in which courts granted default judgments on, or otherwise sustained, RICO conspiracy claims.  See Pl. Mem. at 14; Pl. Supp. at 1.  Nearly all of those cases are readily distinguishable, in that they involved clear relationships between the various conspirators.  For example, Allstate Insurance Company v. New Century Pharmacy, Inc., 19 Civ. 5702 (ENV) (VMS), 2021 WL 7830141 (E.D.N.Y. Aug. 13, 2021), adopted, Order (Mar. 24, 2022), involved a similar but far more limited scheme of generating prescriptions for medically unnecessary and unwarranted compounded pain products.  See id. at *2-3.  There, Delacruz-Gomez was charged with and found liable for participating in two overlapping RICO schemes, involving Delacruz-Gomez and his own medical practice (Life Care Medical, P.C., named as the RICO enterprise in Count XII) and the owner of a single pharmacy (named as the RICO enterprise in Counts VI and VII) that dispensed Delacruz-Gomez's fraudulent prescriptions.  See id. at *8, *10.  In other words, the charges on which Delacruz-Gomez was found liable in that case did not involve allegations that he colluded with a series of prescribing persons or entities with whom he had no apparent connection. Significantly, the damages sought by Allstate and awarded by the court in New Century Pharmacy consisted solely of those arising out of prescriptions written by Delacruz-Gomez (or someone acting under his direction or control) for patients of his own medical practice.  See id. at *12-13.

Most of the other cases cited by GEICO involved the sufficiency of similarly narrowly drawn RICO conspiracy claims, alleging that one or more laypersons (commonly referred to as "management defendants"), who controlled a medical professional corporation that obtained No-Fault payments, conspired among themselves and/or with a nominal owner physician (commonly referred to as the "paper owner") to fraudulently incorporate the medical practice in the latter's name and/or create the appearance that the medical corporation was owned and operated by a medical professional when in fact it was not.[5]  In some instances, those management defendants and nominal owners were further alleged to have conspired with their own management companies and/or companies they established to funnel money between the

---

[5] See, e.g., Allstate Ins. Co. v. Lyons, 11-cv-2190 (PKC)(PK), 2016 WL 11430776, at *6-7 (E.D.N.Y. Sept. 12, 2016) (layperson co-owner of medical practice enterprise conspired to violate RICO with his co-owner layperson and the radiologist they employed); GEICO v. Sanni-Thomas, No. 13-CV-4966 (MKB) (SMG), 2015 WL 5692875, at *9 (E.D.N.Y. Sept. 4, 2015) (alleging that management defendants "ran the alleged scheme to defraud together"), adopted sub nom. GEICO v. Zemlyansky, 2015 WL 5692899 (E.D.N.Y. Sept. 27, 2015); GEICO v. Simakovsky, No. 14 Civ. 3775(KAM)(SMG), 2015 WL 5821407, at *10 (E.D.N.Y. Oct. 5, 2015) (management defendants who recruited chiropractor as nominal owner of professional corporation enterprises were held liable on RICO and RICO conspiracy counts); Allstate Ins. Co. v. Williams, No. 13-CV-2893 (RJD)(JO), 2015 WL 5560543, at *5-6 (E.D.N.Y. Aug. 28, 2015) (owner of medical practice conspired with his independently contracted technician to submit fraudulent claims), adopted sub nom. Allstate Ins. Co. v. Dublin, 2015 WL 5560546 (E.D.N.Y. Sept. 21, 2015); Liberty Mut. Ins. Co. v. Accurate Med. Diagnostics, PC, 13-CV-7256 (CBA) (RLM), 2014 U.S. Dist. LEXIS 174503, at *26-27 (E.D.N.Y. July 16, 2014) (nominal owner of RICO enterprise conspired with management defendants), adopted, 2014 U.S. Dist. LEXIS 174215 (E.D.N.Y. Dec. 17, 2014); GEICO v. Scheer, 13-CV-04039 (SLT) (SMG), 2014 WL 4966150, at *8 (E.D.N.Y. Aug. 18, 2014) (alleging that "the three [management] defendants ran the alleged scheme to defraud together"), adopted, 2014 WL 4966137 (E.D.N.Y. Sept. 30, 2014); GEICO v. Gateva, No. 12-CV-4236 (MKB), 2014 WL 1330846, at *9 (E.D.N.Y. Mar. 30, 2014) (defaulting defendant "sold" her medical license to and conspired with management defendants), amended, 2014 WL 1843291 (E.D.N.Y. May 8, 2014); Smirnov, 2013 WL 5407224, at *9-10 (paper owners of medical clinic enterprises conspired with management defendants in connection with the clinic associated with those paper owners); GEICO v. Hollis Med. Care, P.C., No. 10 Civ. 4341(ILG)(RML), 2011 WL 5507426, at *10 (E.D.N.Y. Nov. 9, 2011) (on reconsideration, denying motion to dismiss RICO conspiracy claim against management defendants in connection with schemes performed with nominal owners at a single medical clinic); Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., No. 05–5934 (DRH)(MLO), 2009 WL 3245388, at *7 (E.D.N.Y. Sept. 30, 2009) (denying motion to dismiss RICO conspiracy claims involving two separate enterprises for which conspiracies were alleged between the respective "paper owners" and non-physician who operated the companies).

management companies and medical corporations.[6]   Notably, none of the aforesaid decisions

resulted in the imposition of joint and several liability on apparently unrelated defendants, or

isolated "spokes," in an alleged RICO conspiracy.

To be sure, GEICO cites several decisions that sustained RICO conspiracy claims

against seemingly unrelated defendants.  See GEICO v. Direct RX Pharm. Inc., 19 CV 5876

(DG) (LB), 2021 WL 6494722, at *4 (E.D.N.Y. Dec. 16, 2021), adopted sub nom. GEICO v.

Delacruz-Gomez, 2022 WL 125822 (E.D.N.Y. Jan. 13, 2022); GEICO v. Badia, No. 13–CV–

1720 (CBA)(VMS), 2015 WL 1258218, at *2 (E.D.N.Y. Mar. 18, 2015) ("Referral

Defendants agreed to contribute to the fraudulent scheme by providing Baneur with access to

patients and 'steer[ing] [patients] to Baneur Medical for the medically unnecessary Fraudulent

Services' in exchange for kickbacks"); State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs.,

P.C., No. 04 CV 5045(ILG), 2008 WL 4146190, at *16 (E.D.N.Y. Sept. 5, 2008) (finding

the defendants made "symbiotic contribution to the overall scheme" in that "all defendants

worked in concert to achieve the goal of perpetrating fraud on [plaintiff insurer]").   Two of

the three cases involved motions for default judgment against Delacruz-Gomez: Direct RX

Pharm., 2021 WL 6494722, at *6-7 (awarding GEICO $1,645,107 in treble RICO damages

against Delacruz-Gomez); Badia, 2015 WL 1258218, at *3 (awarding GEICO $351,632.55 in

---

[6] See, e.g., Allstate Ins. Co. v. Mirvis, CV 08-4405 (SLT)(VVP), 2015 WL 1247103, at *5 (E.D.N.Y. Mar. 2, 2015) (entering default judgment on RICO conspiracy claim against layperson management defendants who conspired with each other and with physician to participate in enterprise through racketeering acts of mail fraud and money laundering), adopted, 2015 WL 1539671 (E.D.N.Y. Mar. 31, 2015); GEICO v. Esses, 12 CV 4424(RJD)(VVP), 2013 WL 5972481, at *8, *9-10 (E.D.N.Y. Nov. 5, 2013) (finding RICO conspiracy involving two "paper owners," including defendant Delacruz-Gomez, management defendants, and money-laundering companies).

damages against Delacruz-Gomez and other defendants found liable for RICO violations and common law fraud).   GEICO relies most heavily on Magistrate Judge Lois Bloom's decision in Direct RX Pharmacy, see Pl. Supp. at 1, which, like the case at bar, involved medically unnecessary prescriptions; Judge Bloom made no specific finding that an agreement existed between Delacruz-Gomez and any other prescribing medical professional or that they had any knowledge of one another.   See 2021 WL 6494722, at *4.   In fact, the only knowledge ascribed to Delacruz-Gomez in that case was "knowledge of the fraudulent scheme[,]" coupled with his participation in it by prescribing medically unnecessary pain products in return for kickbacks.   See id. (citing Complaint ¶¶ 70-84, DE #1 in 19cv5876).   In this Court's view, such allegations do not establish the requisite knowing agreement to participate in a broad RICO conspiracy with other prescribers.

Accordingly, having meticulously surveyed the caselaw concerning pleading requirements for RICO conspiracy claims, and having examined the allegations underlying GEICO's Third Claim for Relief against Delacruz-Gomez, this Court, with the utmost respect for the authors of Direct Rx Pharmacy, Badia, and CPT Medical, reaches a different conclusion in this case.   For all the reasons detailed above, this Court respectfully recommends that the District Court deny GEICO's motion for default judgment on the RICO conspiracy claim.

**B.      Aiding and Abetting Common Law Fraud[7]**

In the Fifth Claim for Relief, GEICO alleges that the prescribing defendants

"knowingly aided and abetted the fraudulent scheme that was perpetrated on GEICO by the

[p]harmacy [d]efendants."   Compl. ¶ 250.

Under New York law, a plaintiff asserting a claim of aiding and abetting fraud must

show "(1) the existence of a fraud;[8] (2) the defendant's knowledge of the fraud; and (3) that

the defendant provided substantial assistance to advance the fraud's commission."   Krys v.

Pigott, 749 F.3d 117, 127 (2d Cir. 2014) (internal quotation marks, alteration and citation

omitted).   GEICO alleges that Wellmart Rx made knowing and material misrepresentations by

filling medically unnecessary prescriptions written by the prescribing defendants, and then

charging GEICO inflated rates for the products under the No-Fault Law.   According to the

pleading, Wellmart intended the insurance company to rely on those misrepresentations,

justifiably and to GEICO's injury.   Thus, consistent with prevailing caselaw in this District,

GEICO has sufficiently alleged the underlying fraud.   See GEICO v. Armengol, 20-CV-6052-

RPK-SJB, 2022 WL 432320, at *6-7 (E.D.N.Y. Jan. 19, 2022), adopted in relevant part, 2022

WL 426163 (E.D.N.Y. Feb. 11, 2022); Allstate Ins. Co. v. A & F Med. P.C., 14-CV-6756

---

[7] Even absent the RICO claim, there is an independent basis for subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds $75,000 and the parties are completely diverse.   See Compl. ¶ 32.

[8] To plead a claim of fraud under New York common law, a plaintiff must allege that the defendant made a (1) material misrepresentation or omission of fact, (2) with knowledge of its falsity and an (3) intent to defraud, and that plaintiff (4) reasonably relied on that misrepresentation or omission, and (5) suffered damages as a result. See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997)

(ENV), 2019 WL 7842516, at *3-4 (E.D.N.Y. Sept. 11, 2019), <u>adopted</u>, 2020 WL 132387 (E.D.N.Y. Jan. 13, 2020); <u>Ajudua</u>, 2018 WL 7252961, at *4-5.

The pleading further alleges that defendant Delacruz-Gomez knowingly made material misrepresentations by issuing prescriptions for pain-relieving products, which he knew were not medically necessary, for the purpose of maximizing the profits of Wellmart Rx, which was allegedly paying him financial kickbacks. Thus, GEICO sufficiently states a claim under New York law for common law aiding and abetting the pharmacy defendants' fraud. <u>See</u> <u>State Farm Mut. Auto. Ins. Co. v. Jamaica Wellness Med., P.C.</u>, 16-CV-04948 (FB) (SMG), 2019 WL 3330240, at *2, *5 (E.D.N.Y. May 31, 2019) (owner of medical supply companies that submitted fraudulent claims to insurer was liable for aiding and abetting the companies' fraud), <u>adopted</u>, 2019 WL 2723548 (E.D.N.Y. July 1, 2019); <u>Abbott Labs.</u>, 2017 WL 57802, at *11 (importers and distributors were properly charged with aiding and abetting pharmacies that used material representations in distributing international version of diabetes test strips).

## III.    Damages

### A.    Common Law Fraud Claim

An admission of liability by default does not concede damages; the plaintiff bears the burden of proving damages, and the defendant must be given the opportunity to contest the amount. <u>See</u> <u>Greyhound</u>, 973 F.2d at 158. Where, as here, a defaulting defendant has never appeared, "the Court's determination is based solely on plaintiff's submissions." <u>Gilbert v. Hotline Delivery</u>, No. 00CIV0160MBMRLE, 2001 WL 799576, at *2 (S.D.N.Y. July 10, 2001). It is within the Court's discretion to decide whether to hold an evidentiary hearing

28

prior to assessing damages.  See Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d

Cir. 1989).

In support of its motion, GEICO initially submitted the declarations of Jennifer Abreu,

an attorney representing GEICO, and of Kathleen Asmus, a claims manager at GEICO.  Ms.

Asmus's first declaration avers that she based her calculations of the amounts paid by GEICO

by reviewing the payment summaries proffered by GEICO, itemizing each payment GEICO

made to Wellmart Rx in connection with the pharmacy's claims for No-Fault Benefits for

prescriptions issued by all the prescribing defendants.  See Declaration of Kathleen Asmus

(Sept. 10, 2021) ("Asmus Decl.") ¶¶ 4-6, DE #106-3.  At the Court's direction, GEICO had

Ms. Asmus extract those payments attributable to prescriptions issued by Delacruz-Gomez.

See Supplemental Declaration of Kathleen Asmus (June 9, 2022) ("Supp. Asmus Decl.") ¶ 4,

DE #112-3; Second Supplemental Declaration of Kathleen Asmus (June 23, 2022) ("2d Supp.

Asmus Decl.") ¶ 4, DE #114-1.  GEICO's payment summaries for the prescriptions issued by

Delacruz-Gomez specify the initials of the patient, the dispensing pharmacy, the claim number,

the check number and the amount paid.  See Ex. 1 to 2d Supp. Asmus Decl., DE #114-2.  In

addition, GEICO attached to the Complaint charts detailing each claim made to GEICO, and

listing the claim number, the billing code used and the approximate date of mailing of the

claims.  See DE #1-3.  Courts have found this type of documentary evidence a sufficient basis

on which to award damages in similar insurance fraud default cases.  See Ajudua, 2018 WL

7252961, at *8; Aminov, 2014 WL 527834, at *7, *10; Smirnov, 2013 WL 5407224, at *15.

Nevertheless, GEICO seeks to hold Delacruz-Gomez jointly and severally liable with

each and every co-defendant on the aiding and abetting fraud claim for amounts paid by GEICO in connection with prescriptions issued by all of the prescribing defendants.  See Pl. Mem. at 8.   New York law provides for joint and several liability for fraudulent acts only where the defendants acted jointly or concurrently to produce a single injury.  See GEICO v. Parkway Med. Care, P.C., 15 Civ. 3670 (FB) (VMS), 2017 WL 1133282, at *14 (E.D.N.Y. Feb. 21, 2017), adopted, 2017 WL 1131901 (E.D.N.Y. Mar. 24, 2017); GEICO v. Infinity Health Prods., Ltd., No. 10-CV-5611 (JG) (JMA), 2012 WL 1427796, at *10 (E.D.N.Y. Apr. 6, 2012), adopted, 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012).   "Joint and several liability may . . . be imposed where a plaintiff demonstrates that the harm it suffered as a result of the conduct of two or more defendants is 'indivisible.'"   GEICO v. Spectrum Neurology Grp., LLC, 14-CV-5277 (ENV) (SMG), 2016 WL 11395017, at *6 (E.D.N.Y. Feb. 17, 2016), adopted sub nom. GEICO v. Premier Pro. Servs., LLC, 2016 WL 1071099 (E.D.N.Y. Mar. 18, 2016); see GEICO v. Erlikh, 16-CV-7120-DLI-SJB, 2019 WL 1487576, at *8 (E.D.N.Y. Feb. 28, 2019).

GEICO paid $1,230,243.98 in reliance on claims submitted by Wellmart Rx, in connection with prescriptions issued in the aggregate by each of the prescribing defendants. See Asmus Decl. ¶ 6.   Of that amount, only $43,342.37 was paid by GEICO in connection with the prescriptions issued by Delacruz-Gomez.   See Supp. Asmus Decl. ¶ 4; 2d Supp. Asmus Decl. ¶ 4 & Ex. 1.   GEICO has not established that Delacruz-Gomez should be held jointly and severally liable for the conduct of each of the prescribing defendants.   As discussed above, the Complaint does not sufficiently allege that the prescribing defendants acted jointly

with one another.   Nor, in connection with its burden of *proving* damages, has GEICO proffered any evidence that the other prescribing defendants had any role in the fraudulent prescriptions issued by Delacruz-Gomez, or that Delacruz-Gomez had any role in the fraudulent prescriptions issued by his co-defendant prescribers.[9]   Accordingly, GEICO has not established that the injury suffered was indivisible.   See Armengol, 2022 WL 432320, at *8; Parkway Med., 2017 WL 1133282, at *15; Spectrum Neurology, 2016 WL 11395017, at *6; Allstate Ins. Co. v. Nazarov, No. 11 CV 6187(PKC)(VMS), 2015 WL 5774459, at *18 (E.D.N.Y. Sept. 30, 2015) (finding that "it would be inappropriate to assign joint and several liability between" two defaulting defendants where plaintiffs did not allege that one defaulting defendant "had any role in the fraudulent billings sent by" the other).

Based on the information proffered by GEICO, this Court concludes that the amounts sought by GEICO for prescriptions issued by Delacruz-Gomez are supported by the record, and respectfully recommends that Delacruz-Gomez be held liable for $43,342.37 on the aiding and abetting fraud claim.

### B.    Prejudgment Interest

GEICO seeks prejudgment interest on its common law aiding and abetting fraud claim against defendant Delacruz-Gomez at the rate of nine percent (9%) per annum.   See Pl. Mem. at 23-24.

---

[9] It is worth noting that, in settling its claims with the appearing prescribing defendants, GEICO apparently did not seek to hold any of them responsible for prescriptions written by other prescriber defendants.   See Sealed Summary of Settlements.

New York law provides for the award of prejudgment interest on damages for fraud, computed from the "earliest ascertainable date the cause of action existed," at the non-compoundable rate of nine percent (9%) per annum.   See Ajudua, 2018 WL 7252961, at *10; N.Y. C.P.L.R. §§ 5001, 5004.   An award of interest on damages for fraud is mandatory under New York law.   See Ajudua, 2018 WL 7252961, at *10; Parkway Med., 2017 WL 1133282, at *17; N.Y. C.P.L.R. § 5001(a).

GEICO calculates interest by using an accrual date of January 1st of the year following the year in which the last payment was made by GEICO to Wellmart Rx.   See Proposed Pre-Judgment Interest Chart (June 9, 2022) ("Interest Chart"), DE #112-4.   The Court finds this method to be conservative and reasonable, and therefore respectfully recommends that GEICO's prejudgment interest be calculated at a rate of nine percent (9%) per annum, according to the method described above.   See Ajudua, 2018 WL 7252961, at *11; Parkway Med., 2017 WL 1133282, at *17; AMD Chiropractic, 2013 WL 5131057, at *9.   Since the last payment made by GEICO to Wellmart Rx was in 2020, interest should be calculated from January 1, 2021 until the entry of judgment.   See Interest Chart.   Accordingly, the Court recommends that GEICO be awarded prejudgment interest in the amount of $5,826.05 through June 30, 2022, and at a daily rate of $10.69 until the entry of judgment.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the District Court grant in part GEICO's motion for default judgment, to wit, that it enter judgment against defendant Rafael Delacruz-Gomez, M.D., on the Fifth Claim for Relief, and award GEICO

damages in the amount of $43,342.37, plus prejudgment interest in the amount of $5,826.05 through June 30, 2022, and at a daily rate of $10.69 until the entry of judgment.   The Court further recommends that default judgment on the Third Claim for Relief be denied and that that claim be dismissed as against defendant Delacruz-Gomez.[10]

Any objections to this Report and Recommendation must be filed with Judge Matsumoto by July 11, 2022.   Failure to file objections in a timely manner may waive a right to appeal the District Court order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is requested to send copies of this report and recommendation to defendant Rafael Delacruz-Gomez, M.D. at the following addresses:

> Rafael Delacruz-Gomez, M.D.
> 1244 Wheeler Avenue, Apt. 3
> Bronx, NY 10472
>
> Rafael Delacruz-Gomez, M.D
> 852 Avenue Z
> Brooklyn, NY 11235

**SO ORDERED.**

**Dated:   Brooklyn, New York**
**          June 24, 2022**

/s/        *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**

---

[10] GEICO's claims against "John Doe Nos. '1' through '5,'" see Compl. ¶ 30, have not been pursued and should likewise be dismissed.